**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF 529 GEORGE STREET, APT 2-L, NEW HAVEN, CONNECTICUT | Case No. 18mj1897 (RMS)<br><br>**Filed Under Seal** |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF A BLACK 2018 NISSAN ROGUE BEARING CONNECTICUT LICENSE PLATE AP78467 AND VIN # KNMAT2MV3JP598364 | Case No. 18mj1895 (RMS)<br><br>**Filed Under Seal** |
| IN THE MATTER OF THE AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT AUTHORIZING A DNA SAMPLE COLLECTION FROM COLLIN DAVIS | Case No. 318mj1896 (RMS)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT**

I, Sean Brackett, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

**INTRODUCTION**

1.      This Affidavit is being submitted in support of an Application for a Search and Seizure Warrant for **529 George Street, Apt 2-L, New Haven, CT 06511 ("Subject Location").** **Subject Location** is described as an apartment on the second floor, across from the stairs, of a stand-alone, multi-level dwelling with grey siding, white trim and a tan roof, with a black fence in the front yard.  The numbers "529" are displayed on several mailboxes to the left of the front door, which is white.  There is a porch with white columns on the front of the structure.  The **Subject Location** is further described in Attachment A1 and photographs are attached as Exhibit 1.

1

2.      This Affidavit is also being submitted in support of an Application for a Federal Search and Seizure Warrant for a black **2018 Nissan Rogue bearing Connecticut license plate AP78467 AND VIN # KNMAT2MV3JP598364 ("Subject Vehicle").** The **Subject Vehicle** is a rental vehicle owned by Enterprise Holdings, Inc.  The vehicle was rented on November 6, 2018 by Angel Deette ROLAND, who provided the **Subject Location** as her address of record.  The Subject Vehicle is further described in *Attachment A2*.

3.      This affidavit is also being submitted in support of an application for a search warrant to obtain samples of DNA for comparison purposes in the form of hair and saliva from:

    a)  Collin Anthony DAVIS, a man born in 1986, assigned a Social Security account number ending in 5195, and having been assigned an FBI number ending in 5DC3. DAVIS is further described as being approximately five feet, ten inches tall, and approximately 180 pounds.  DAVIS's address of record is 8001 Dewberry Lane, Apartment 110, Pasadena, Maryland, in the District of Maryland.  A picture of DAVIS is available in *Attachment A3.*

The applied for warrant would authorize members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents assisting in the investigation, to obtain DNA contained within hair lock and saliva samples from DAVIS.

4.      I submit this affidavit for the limited purpose of securing the requested warrants. I have not included details of every aspect of this investigation to date. Rather, I have set forth only those facts I believe is necessary to establish probable cause for issuance of the warrants. I have not, however, intentionally omitted information that would tend to defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, a review of documents and other evidence, and conversations with other law enforcement officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

5.     The ATF and Baltimore Police Department ("BPD") have been investigating a carjacking and homicide that occurred in Baltimore, Maryland on September 25, 2018. The victim of the carjacking and homicide was Anthony RAYNOR. Collin DAVIS is believed to be one of at least two subjects involved in the crime. I submit that probable cause exists to believe that DAVIS and at least one other suspect committed an armed carjacking of RAYNOR on September 25, 2018, in Baltimore, Maryland, in furtherance of 18 U.S.C. § 2119 (Carjacking) and 18 U.S.C. § 924c (Use of a Firearm in Furtherance of a Crime of Violence). The search of the Subject Location, the Subject Vehicle, and DAVIS's DNA would enable law enforcement to recover evidence including tangible items taken from the crime scene.

## AFFIANT BACKGROUND

6.     I have been a Special Agent with ATF since 2015 and I am currently assigned to the ATF New Haven, CT Field Office. I attended the Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training, both located in Glynco, Georgia, for a combined period of 26 weeks. I received extensive training in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code. I received a bachelor's degree from the United States Military Academy and a Master's Degree from American Military University. I also served for over nine years as an Infantry and Special Forces Officer in the U.S. Army and have conducted eight deployments to the Middle East and Central Asia.

7.     I have conducted and participated in numerous investigations concerning the illegal possession of firearms, federal controlled substance laws, and the commission of violent crimes. I received specialized training and personally participated in various types of investigative activities, including, but not limited to: (a) physical surveillance; (b) the debriefing of defendants,

witnesses, informants, and other individuals who had knowledge of firearms and controlled substance laws; (c) undercover operations; (d) the execution of search & arrest warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; and (g) the handling and maintenance of evidence.

8.      I have previously participated in multiple investigations involving crimes of violence and the use of firearms.  I am familiar with federal crimes of violence statues and the methods employed by those who perpetrate these acts.  I have been the affiant on search warrants and made numerous arrests for violent firearms crimes.  I know based on my training and experience that Deoxyribonucleic Acid ("DNA") can be found on items such as clothing and firearms and can be compared to a sample of DNA from a known person.  This comparison can help identify or eliminate suspects.

## PROBABLE CAUSE

9.      On September 25, 2018, at approximately 11:59 p.m., a BPD officer responded to the 5100 block of Curtis Avenue in Baltimore, Maryland, following reports of a shooting.  The officer located RAYNOR, who was lying face down in the street suffering from apparent gunshot wounds to the head and torso.  There were no shell casings; however, two projectiles were recovered from the scene.  RAYNOR was transported to Shock Trauma, a Hospital in Baltimore, Maryland, where he was pronounced dead. The medical examiner found the manner and cause of death to be homicide/gunshot wounds.  The autopsy also revealed that RAYNOR's throat had been cut.

10.      Investigators obtained surveillance camera footage from the area that showed a silver 4-door sedan driving on Curtis Avenue shortly before the time that RAYNOR's body was discovered in the street.  They also interviewed a witness who reported that he/she observed a

silver sedan pull over on Curtis Avenue where he/she was able to see movement of multiple individuals within the vehicle on both the passenger side and driver side. He/she heard the doors of the vehicle open and slam shut multiple times as if somebody was trying to get out of the vehicle. He/she then observed the vehicle continue northbound a short distance on Curtis Avenue before stopping for a second time. At that point, the witness heard multiple gunshots, noting that the first shot was muffled, while the second was loud.

11.     Investigators contacted RAYNOR's family. They reported seeing RAYNOR at approximately 6:00 p.m. on September 25, and that he had been driving his 2011 silver Chevrolet Cruze bearing Maryland plate 1BT6689. Investigators showed a family member a screen shot of the silver 4-door sedan from the surveillance camera footage. The family member identified the vehicle as RAYNOR's car. The family member also provided investigators with two cellular telephone numbers utilized by RAYNOR. The Chevrolet Cruze was not manufactured in the state of Maryland and so moved in interstate or foreign commerce prior to the theft.

12.     Investigators found a License Plate Reader ("LPR") device approximately one mile from the location of RAYNOR's body. They conducted a query of RAYNOR's vehicle tag and learned the vehicle passed the device three different times on September 25 (8:45 p.m., 9:10 p.m. and 11:43 p.m.). Investigators believe RAYNOR died at approximately 11:50 p.m. There were no LPR "hits" for the vehicle after 11:43 p.m.

13.     On September 26, 2018, investigators found RAYNOR's vehicle in an alleyway behind 1623 Spruce Street, Baltimore, Maryland, which is approximately 0.6 miles away from RAYNOR's body. Investigators searched the vehicle and found a single bullet hole in the rear passenger side door that appeared to come from the interior of the vehicle and travel outward

supporting the theory that shots were fired from inside the vehicle.[1]  There was suspected blood throughout the interior of the vehicle and they recovered two pieces of a torn bloody white t-shirt that had been tied into knots.  Investigators swabbed the vehicle for DNA.  Investigators did not recover any other evidence from the scene; noticeably missing was RAYNOR's cellphones, wallet, identification and a gold necklace that RAYNOR wore.

14.     A confidential source ("CS-1") provided information about a potential suspect.  The information provided by CS-1 has been corroborated to the extent possible and has proven reliable. CS-1 knows RAYNOR personally.  CS-1 does not have a criminal record and is cooperating with law enforcement as part of their civic duty.  CS-1 has not received any consideration or financial compensation for the information.  According to CS-1, RAYNOR had an associate named Collin DAVIS who lived at 1623 Spruce Street, which CS-1 knew to be close to where RAYNOR's body and vehicle were found.  Investigators reviewed data from several credit monitoring services and found that DAVIS had resided at 1623 Spruce Street (the rear of which is adjacent to where RAYNOR's vehicle was recovered) for several months during 2018.  A second confidential source ("CS-2") confirmed that DAVIS and his sister previously resided at 1623 Spruce Street and identified photographs of DAVIS and his sister.  The information provided by CS-2 has been corroborated to the extent possible and has proven reliable.  CS-2 knows DAVIS personally.  CS-2 does not have a criminal record and is cooperating with law enforcement as part of their civic duty.  CS-2 has not received any consideration or financial compensation for the information.  CS-2 noted that DAVIS and his sister were evicted from 1623 Spruce Street sometime in early October 2018.  CS-2 advised investigators that 1623 Spruce Street is currently vacant.  Investigators went

---

[1] The state search warrant was authorized by the Honorable Flynn Owens in the District Court of Maryland for Baltimore City.

to 1623 Spruce Street as recently as November 15, 2018 and the home appears to be vacant. Additionally, CS-2 identified a red Honda Accord bearing Maryland license plate 3EFM29 as a vehicle driven by DAVIS. The vehicle is registered to DAVIS's mother. DAVIS was stopped by the police in this vehicle as recently as August 2018, according to police records. LPR data showed this vehicle parked in front of 1623 Spruce Street as recently as July 2018.

15.    DAVIS is currently on probation and reports to the Maryland Department of Public Safety and Correctional Services ("MDPSCS"). Investigators reviewed MDPSCS records and found that DAVIS's probation officer was aware that DAVIS and his sister had been residing at 1623 Spruce Street, even though DAVIS had provided the officer his mother's address at 8001 Dewberry Lane # 110, Pasadena, Maryland, as his address of record. The file also listed DAVIS's cell phone as 443-694-0725 (the "original phone"). Investigators subsequently reviewed Howard County Police Department ("HCPD") reports and learned that officers spoke with DAVIS on multiple occasions by calling him on his original phone. The calls were in reference to domestic situations involving DAVIS's daughter and her mother. Additionally, the original phone was also linked to DAVIS's Facebook account ("Collin Davis") which has a picture matching DAVIS. Investigators know based on review of DAVIS's Facebook account that the most recent post was from September 5, 2018.

16.    In October 2018, Investigators reviewed the call detail records ("CDRs") for RAYNOR's phones and DAVIS's original phone. Investigators discovered that on the evening that RAYNOR was murdered (September 25, 2018), DAVIS's original phone exchanged approximately 42 text messages with one of RAYNOR's phones (410-855-2369) between 3:45 p.m. and 8:49 p.m. As previously noted, LPR data showed that RAYNOR's vehicle first arrived

in the vicinity of 1623 Spruce Street at approximately 8:45 p.m. that evening.  The final contact between DAVIS's original phone and RAYNOR's phone was 8:49 p.m.

17.     On October 25, 2018, U.S. Magistrate Judge for the District of Maryland J. Mark Coulson authorized a search warrant allowing law enforcement to obtain historical cell site data from the aforementioned phones in order to assist investigators in determining where DAVIS's original phone and RAYNOR's phones were on the evening of RAYNOR's murder.[2]  Investigators reviewed the historical cell site data, which revealed that the night that RAYNOR was killed, both of RAYNOR's phones and DAVIS's original phone "hit" (i.e. - sent a signal to) the same cellular towers throughout the night, indicating that DAVIS and RAYNOR were likely together from approximately 8:50 p.m. up until the time that RAYNOR was murdered.  Furthermore, the data showed that DAVIS and RAYNOR likely travelled together from 1623 Spruce Street to RAYNOR's residence in Severn, Maryland, arriving at approximately 10:00 p.m. and staying there until 11:15 p.m. This event is corroborated by CS-1, who stated that RAYNOR kept large amounts of narcotics in a plastic storage bin in his bedroom; however, when investigators went to RAYNOR's residence to retrieve the bins, they were not there.  This is also corroborated by a text message chain beginning at approximately 9:40 p.m. between RAYNOR and his brother indicating that RAYNOR needed his brother to unlock the basement door because RAYNOR needed to "bring something in and I don't want everyone seeing it." A screen shot of the text message chain was provided to investigators by RAYNOR's brother.  The date and times of the text messages have been corroborated through a review of RAYNOR's toll records.  The data is further

---

[2] The warrant also authorized the collection of a known sample of DAVIS's DNA in order to test and compare it to DNA recovered from the crime scene; however, DAVIS could not be located and the DNA warrant expired on November 9, 2018.

corroborated by the aforementioned LPR hits that showed RAYNOR's vehicle enter, exit and later return to DAVIS's neighborhood for 1623 Spruce Street. After the murder, DAVIS's original phone travelled to and eventually stopped at the tower closest to 8001 Dewberry Lane #110. The phone remained at 8001 Dewberry Lane #110 for the remainder of the day. 8001 Dewberry Lane #110 is listed as DAVIS's address of record with the Maryland Motor Vehicle Administration and is where DAVIS's probation officer has met with DAVIS on numerous house visits.

18.      DAVIS has failed to report to his last two scheduled meetings for October 24 and 29, 2018 with his probation officer. In an attempt to locate DAVIS, investigators established surveillance of the location where DAVIS and his probation officer were scheduled to meet in order to follow DAVIS after the meeting. The probation officer spoke with DAVIS on the original phone after he missed their first meeting. DAVIS told the officer that he could not meet that day because he was working at the GameStop in Bowie. Investigators immediately went to the location but were unable to locate DAVIS.[3] The probation officer has attempted to contact DAVIS on the original phone multiple times since DAVIS missed the second meeting but DAVIS did not answer or return phone calls. As of the writing of this affidavit, DAVIS has yet to respond to his probation officer.

19.      Investigators have learned throughout the course of the investigation that DAVIS travelled out of state on several occasions since the murder. In October, HCPD initiated an emergency 48-hour GPS order for DAVIS's original phone in relation to a domestic dispute

---

[3] GameStop Corp. advised investigators that DAVIS was recently hired as a seasonal employee, but has since failed to show up for work, skipping a mandatory orientation as recently as November 3, 2018 and not calling to explain why.

between DAVIS and the mother of his juvenile daughter.[4] On October 14, 2018, DAVIS's original phone hit a tower in Whiteville, North Carolina.

20.     On October 31, 2018, U.S. Magistrate Judge for the District of Maryland A. David Copperthite authorized a tracking warrant, cell site simulator search warrant, and pen register allowing law enforcement to monitor and track DAVIS's original phone in real time.   On November 1, 2018, at approximately 8:30 a.m., investigators received the first GPS tracking data. The GPS data indicated that the phone was located in New Haven, Connecticut.  The phone data indicated that the original phone then travelled to Queens, New York, during the afternoon and returned to New Haven later that evening, stopping at the same location that it started at earlier that day.  On November 2, 2018, at approximately 1:00 a.m., GPS tracking for the phone stopped. As of the writing of this affidavit, the phone has not provided any additional tracking or outgoing call data.  Sprint, the carrier for DAVIS phone, later confirmed that DAVIS requested that his line be cancelled effective November 11, 2018 (the end of the current billing cycle).

21.     On November 8, 2018, U.S. Magistrate Judge for the District of Maryland Stephanie A. Gallagher authorized several pen registers (the "Associate Pen Registers") to monitor the real time CDRs of multiple telephone numbers that had been in contact with DAVIS's original phone prior to it being "dropped" by DAVIS.  Analysis of the CDRs revealed the following:

a.  One of the phone numbers being monitored (443-597-3733) is a cell phone used by DAVIS's mother, Shar Ron Davis.  The number, which has had significant contact with

---

[4] The detectives were following up on information from the juvenile girl's mother that the girl had run away from home and was likely with DAVIS.  Subsequently, an HCPD detective called DAVIS' original phone and spoke with DAVIS.  DAVIS told the HCPD detective that his daughter was not with him.   The daughter was subsequently located on October 29, 2018 and she advised that she had been staying with a family member in the Baltimore area.

DAVIS, was developed based on information provided by the HCPD, who have spoken with DAVIS's mother via this number. Between September 8 and October 31, 2018, Shar Ron Davis's cell phone had contact with DAVIS's original cell phone almost every single day (44 days out of a 53-day period). There have been no contacts between the phones since October 31, 2018.

b. Starting on November 2, 2018 (the date that investigators believe that DAVIS stopped using his original phone) the phone number 203-887-5518 (DAVIS's "new phone") made an incoming call to Shar Ron Davis's cell phone.[5] Her cell phone proceeded to have both incoming and outgoing contact with DAVIS's new phone every day since.

c. DAVIS's new phone did not appear in the CDRs of Shar Ron Davis's cell phone or any of the other Associate Pen Registers' CDRs prior to November 2, 2018.

d. On November 9, 2018 at approximately 2:20 p.m., Investigators were present during a phone conversation between DAVIS's probation officer and Shar Ron Davis. During the conversation, the probation officer told Shar Ron Davis that he was unable to get in touch with DAVIS via DAVIS's original phone. Shar Ron Davis noted that DAVIS's phone was no longer working and that she would try to advise her son to contact the probation officer. On that same date at approximately 5:15 p.m., Shar Ron Davis's cell phone called DAVIS's new phone and had a conversation that lasted for approximately 13 minutes.

e. Another cell phone number that is being monitored by law enforcement is 304-685-0115. This number is linked to April Harper. That cell phone was being monitored

---

[5] According to Sprint, the account for the DAVIS' new phone was activated on November 2, 2018.

based on significant contact with Davis's original cell phone, including the night RAYNOR was killed. April Harper's CDRs linked the phone to a Baltimore address. A credit monitoring service search linked the phone to the **Subject Location** as of November 2018. The last contact between April Harper's cell phone and Davis's original cell phone was November 2, 2018.

f.   Angel Roland is the listed subscriber of DAVIS's new phone. [6] The phone was added as a new phone on Angel Roland's account on November 2, 2018, which is the same day that DAVIS stopped calling his mother and April Harper from his original cell phone.

g.   Investigators reviewed data from several credit monitoring services and found that the names April Harper, Angel Harper and Angel Roland are all linked to the **Subject Location**. According to the GPS data that was obtained from DAVIS's original phone on November 1, 2018, the phone was in close proximity to the **Subject Location** on that date.

h.   DAVIS's new phone area code (203) is assigned to the southwestern portion of Connecticut. Investigators know from the aforementioned tracking of DAVIS's original phone that DAVIS was in Connecticut on November 1 and November 2, 2018. DAVIS's new phone is the only phone with a 203 area code that appears on Shar Ron Davis's cell phone CDRs.

---

[6] Based on my training and experience, it is not unusual for criminals to register their phones in the name of other individuals in order to evade law enforcement. DAVIS' original phone was also subscribed in the name of a different individual.

i.   The only common numbers found on any of the Associate Pen Registers is Shar Ron Davis's cell phone, April Harper's cell phone and DAVIS's new phone. On November 9, 2018, the phone subscribed to April Harper placed an outgoing call to DAVIS's new phone. The call lasted approximately 33 seconds.

22.   On November 13, 2018, U.S. Magistrate Judge for the District of Connecticut Robert M. Spector authorized a tracking warrant and cell site simulator search warrant for DAVIS's new phone. On November 14, 2018, U.S. Magistrate Judge Stephanie A. Gallagher for the District of Maryland authorized a pen register to monitor the real time CDRs of DAVIS's new phone. On November 14, 2018, at approximately 9:00 a.m., investigators received the first GPS tracking data for DAVIS's new phone. The GPS data indicated that the phone was located in Whiteville, North Carolina (the same area that the aforementioned HCPD emergency ping put DAVIS's original phone in October).

23.   On November 15, 2018, at approximately 4:00 a.m., DAVIS's new phone began travelling northbound on I-95. It arrived in Baltimore, Maryland at approximately 11:00am and moved quickly throughout the city. ATF Baltimore surveillance units attempted to locate and identify the vehicle that DAVIS was travelling in, but were unsuccessful in determining its exact location. At approximately 2:00 p.m., the phone continued to travel northbound as it proceeded up the I-95 corridor through Delaware and New Jersey.

24.   On November 16, 2018, at approximately 12:00am, ATF agents from the ATF New Haven field office, who had been monitoring the GPS data being transmitted by DAVIS's new phone, established surveillance in the vicinity of the Subject Location in anticipation of the phone's arrival at their location. At approximately 12:50 a.m., agents received notification that DAVIS's phone was in the immediate area. At that same time, surveillance units observed a black 2018

13

Nissan Rogue bearing CT tag AP78467 (the "Subject Vehicle") arrive at 529 George Street, New Haven, Connecticut.  A black male matching the description of DAVIS and two black females exited the vehicle.  They retrieved luggage from the vehicle and then proceeded inside 529 George Street.  DAVIS's original phone remained in that same location overnight and into the morning.  The GPS data for the pings throughout the morning of November 16, 2018 are the exact same location that GPS data put his original phone back on November 1 and 2, 2018.  As of the writing of this affidavit, the phone has consistently pinged for long periods of time in that same location, to include overnight on November 17, 2018, indicating that DAVIS is currently residing at the Subject Location.

25.     As described above, the Subject Vehicle was rented on November 6, 2018 by ROLAND in the New Haven Enterprise Rental Car office located at 408 Crown Street, New Haven, Connecticut.  It is currently scheduled to be returned on November 20, 2018.  On her rental agreement, ROLAND provided the Subject Location as her address and the phone number 203-589-9827.  Furthermore, ROLAND is listed as the current subscriber for DAVIS's new phone and her number has had contact with DAVIS's new phone multiple times since DAVIS obtained the phone on November 2, 2018.

26.     I believe that DAVIS possesses firearms and related contraband at Subject Location and in Subject Vehicle. My belief is bolstered by my training and experience and participation in this and other investigations involving firearms, as well as conversations with other agents, from which I know:

   a. That individuals who possess stolen and/or illegal firearms often possess items associated with firearms, such as ammunition, magazines for storing and loading

14

ammunition, gun boxes, holsters, gun parts, shell casings, items used to clean and

maintain firearms, firearms-related publications, and firearms-related documents;

b.   That possessors of stolen and/or illegal firearms commonly maintain their firearms for

long periods of time, because firearms are valuable commodities;

c.   That possessors of stolen and/or illegal firearms commonly maintain the foregoing

items where they have ready access to them, such as inside their residences;

d.   That possessors of stolen and/or illegal firearms commonly maintain the foregoing

items inside combination or key-lock safes or strong boxes, suitcases, storage lockers,

safety deposit boxes, locked cabinets, leased storage units, and other types of locked

or closed containers, and hidden compartments, for ready access and to conceal them

from law enforcement authorities

27.    On November 19, 2018, surveillance units observed a male matching DAVIS

description and three females enter the black Nissan Rogue bearing CT license plate AP-78467

and depart the residence at 529 George Street.  Surveillance elements followed the vehicle to the

Bubble and Squeak Laundromat located at 130 Park Street, New Haven, CT.  Surveillance

observed DAVIS doing laundry. Members of the ATF Special Response Team (SRT) executed an

arrest of DAVIS inside the laundromat on an outstanding Violation of Probation warrant out of

the state of New York.

28.    ATF Special Agents identified Angel ROLAND as one of the females inside the

laundromat with DAVIS.  ROLAND was not placed in handcuffed, nor was she read her Miranda

Rights. ATF Special Agents then asked ROLAND to describe which apartment door belonged to

her.  ROLAND stated that if you come up to the stairs to the top of the landing of 529 George

Street, her apartment door would be facing it.  ATF Special Agents then asked if ROLAND could

provide her keys for Special Agents to try the lock to confirm the door.  ROLAND agreed.  An ATF Special Agent on the scene of 529 George Street placed the key into the lock of the door at the top of the landing and confirmed that the key rotated the lock.  At no time did anyone enter the apartment.

29.     Based on my experience and expertise, I know that suspects often conceal items used during carjackings in their homes and their vehicles.  The fruits of said robberies are also often stored in their homes and their vehicles to include victims' property and car keys. Additionally, based on my training and experience, I know that cellular phones, computers, tablet mobile devices, cameras, and GPS devices may be used by the robbers in planning robberies.  The charging devices necessary for using the items should also be seized, as they may be needed to power them on again for a later search.

## AUTHORIZATION REQUEST

30.     Based on my training, knowledge, experience, and the information contained herein, I believe that **529 George Street, Apt 2-L, New Haven, CT 06511** ("**Subject Location**") and the **2018 Nissan Rogue bearing Connecticut license plate AP78467 with VIN # KNMAT2MV3JP598364** ("**Subject Vehicle**") will contain evidence, fruits, instrumentalities, and/or evidence violations of 18 U.S.C. § 2119 (Carjacking), and 18 U.S.C. § 924c (Use of a Firearm in Furtherance of a Crime of Violence.   The anticipated evidence includes that described in Attachment B.

31.     I also believe that DAVIS's DNA will be on items recovered from RAYNOR's vehicle.  A known sample of his DNA is required in order to test and compare any and all DNA recovered.  Accordingly, I am requesting authorization for a warrant to obtain samples of DNA for comparison purposes in the form of hair and saliva from DAVIS to compare to suspected blood

and other evidence found in RAYNOR's vehicle in relation to a carjacking/homicide investigation in violation of 18 U.S.C. § 2119 (Carjacking), and 18 U.S.C. § 924c (Use of a Firearm in Furtherance of a Crime of Violence.

32.     In addition, ATF is requesting an any time exception to the search warrant.  This request is made due to DAVIS' suspected involvement in the aforementioned homicide as well as his past propensity for violence.  DAVIS has multiple felony arrests which include drug trafficking while possessing a firearm, robbery utilizing a firearm and assault.  DAVIS is also the suspect in another homicide in the Baltimore area.  DAVIS absconded from parole after the carjacking and homicide, he dropped his primary cell phone and has fled to Connecticut.  We also believe that DAVIS is in possession of at least one firearm.  In order to ensure the safety of both the officer and the public at large, we request the flexibility to execute this warrant any time should the situation change.

33.     WHEREFORE, I make this Affidavit in support of my request in the issuance of a search warrant authorizing the search of the **Subject Location**, the **Subject** Vehicle, and **DAVIS's DNA** person seizure of all items described in Attachment B, incorporated herein and attached to the proposed search warrant.

Special Agent Sean Brackett
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn and subscribed before me on November _19_, 2018.

/ s /

Robert M. Spector
United States Magistrate Judge

## ATTACHMENT A1

## DESCRIPTION OF PREMISES TO BE SEARCHED

The **Subject Location** is **529 George Street, Apt 2-L, New Haven, CT 06511**.  It is described as apartment 2-L in a stand-alone, multi-level dwelling with a black fence in the front yard.  529 George Street has grey siding with white trim and a tan roof.  The numbers "529" are displayed on several mailboxes to the left of the front door, which is white.  There is a porch with white columns on the front of the structure. Apartment 2-L is up the stairs to the second floor and then straight across the landing. A photograph of 529 George Street is attached as Exhibit 1. A photograph of the door of Apartment 2-L is attached as Exhibit 2.

1

Exhibit 1

529 George Street, New Haven, Connecticut



Exhibit 2

529 George Street, New Haven, Connecticut, Apartment 2-L



**ATTACHMENT A2**

**DESCRIPTION OF PREMISES TO BE SEARCHED**

The **Subject Vehicle** is a black 4-door Sport Utility Vehicle **2018 Nissan Rogue bearing Connecticut license plate AP78467 AND VIN # KNMAT2MV3JP598364.**  The **Subject Vehicle** is a rental vehicle owned by Enterprise Holdings, Inc.  The vehicle was rented on November 6, 2018 by Angel Deette ROLAND.

## ATTACHMENT A3

### PERSON TO BE SEARCHED



Collin Anthony DAVIS

## ATTACHMENT B

## PARTICULAR ITEMS TO BE SEIZED

The **Subject Location** and **Subject Vehicle** shall be searched for evidence of violations of 18

U.S.C. § 2119 (Carjacking), and 18 U.S.C. § 924c (Use of a Firearm in Furtherance of a Crime

of Violence:

- a. Weapons, handguns, and ammunition, as well as items pertaining to the possession of firearms, including gun cases, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, and receipts for the purchase and/or repair of all these items.

- b. Cellular Telephones, tablet computers, GPS devices, pagers, and personal digital assistants and any names, addresses, telephone numbers, and codes stored therein, and indicia of ownership of these communications devices, including boxes, manuals, chargers, receipts, and phone bills;

- c. Jewelry, wallet, storage bins, driver's license/identification, and any and all personal affects from victim Anthony RAYNOR

- d. Photographs (to include still photos, negatives, movies, slides, video tapes, and undeveloped film);

- e. Records of travel including, but not limited to, tickets, transportation schedules, passports, notes and receipts related to travel, luggage tags, and motel/hotel receipts;

- f. Identification documents;

- g. Vehicle Keys;

- h. Indicia of occupancy, residency, ownership or lease of the premises, including but not limited to keys, photographs, utility and telephone bills, other mail, and other documents; and

i.  Safes, combination or key-lock strong boxes or other secure storage containers, suitcases, storage lockers, safety deposit boxes, locked cabinets and other types of locked or closed containers, and hidden compartments that may contain any of the foregoing.